THE CITY OF CLINTON, Plaintiff-Appellee, *v.* RICHARD GLASSON, Defendant-Appellant.

Fourth District Nos. 12962-63 cons.

Opinion filed January 29, 1976.—Rehearing denied March 4, 1976.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellant.

Smith, Smith & Taylor, of Clinton (Joseph Taylor, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant Richard Glasson was the owner of a tract of land in Clinton, Illinois, and had constructed thereon an eight-unit apartment building. On February 20, 1973, the City of Clinton enacted a zoning ordinance classifying defendant's property as R-1 or single-family dwelling district. In May 1974, defendant requested the Zoning Board of Appeals to grant him a variance to erect another multifamily dwelling on the property. The Board voted to approve defendant's request and advised him in writing on June 6, 1974, that the variance had been granted. This was in fact defendant's second variance, an earlier one having lapsed.

On June 7, 1974, defendant obtained a building permit and immediately commenced construction. On June 11, he was orally advised by the city attorney that, in the attorney's opinion, the building permit was illegal and void and construction must cease immediately. Nevertheless, foundation footings for the apartment building were dug June

11 and footings were poured June 12, the same date defendant received the written notice from the city attorney that his building permit was illegal. As of June 12, defendant had incurred expenses of $2000-$3000 in construction of the building. He continued to work on construction until June 13, when the City secured a restraining order from the circuit court and served him with a criminal complaint.

The circuit court combined for hearing both the criminal complaint and the City's civil suit for a permanent injunction against construction of the multifamily dwelling. The court granted the permanent injunction and fined the defendant $10 for violation of the pertinent city ordinance. Notice of appeal from the civil judgment (our General No. 12963) and the criminal judgment (our General No. 12962) were filed separately, but the cases were consolidated for oral argument and are herein consolidated for opinion.

Defendant challenges the injunction as beyond the jurisdiction of the circuit court. He further argues that because the Zoning Board of Appeals acted within its powers in granting the variance, his building permit was legal and valid, and that the City is estopped in any case from asserting the invalidity of the building permit or preventing defendant from proceeding with construction.

■■ Defendant argues that the circuit court lacked jurisdiction to enter an injunction because the proper method of review was through the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) However, we are satisfied that the injunction was properly sought under section 11—13—15 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15), which allows local authorities to seek an injunction against construction in violation of municipal ordinances.

The Municipal Code provides that the legality of the granted variance hinges on interpretation of Clinton city ordinances. Section 11—13—5 (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—5) provides that the authority of zoning boards of appeals in municipalities under 500,000 population to grant variances is subject to the power of the municipalities and that "If the power to determine and approve variations is reserved to the corporate authorities, it shall be exercised only by the adoption of ordinances."

■■ While section 19—109—4(b) of the Clinton Zoning Ordinance seems on its face to grant the Board of Appeals authority to issue variations, it is apparent from the definition of variations set out in section 19—102—48 that these are not "variances" or "variations" in the traditional sense of that word or in the sense that the word is used in the Municipal Code. The Clinton ordinance defines variance as a modification "for the purpose of assuring that no property, because of special

circumstances applicable to it, shall be deprived of privileges commonly enjoyed by other properties in the same vicinity and district." What defendant sought and thought he had received was not the opportunity to have his property enjoy "privileges commonly enjoyed by other properties in the same vicinity and district"; he sought rather a variance in the traditional sense of that term, "a grant of relief to an owner from the literal requirements of the ordinance where literal enforcement would cause him undue hardship." (*Rosenfeld v. Zoning Board of Appeals*, 19 Ill. App. 2d 447, 450, 154 N.E.2d 323, 325.) Yet this power is reserved to the municipality under section 19—109(b) of the Clinton ordinances, where it is said:

> "Nothing herein contained shall be construed to give or grant to the Board of Appeals the power or authority * * * [to make] any alterations or change of the zoning ordinance except to make recommendations to the City Council on such specific cases as may properly come before the Board of Appeals."

Consequently, the Board of Appeals acted beyond the scope of its power in attempting to grant a variance, and both the variance and the building permit issued in reliance upon it are null and void.

Defendant contends that the City, having granted the building permit, is, in any case, estopped from asserting its invalidity. While change of position in reliance on a validly issued building permit gives the property owner a vested right to complete his construction and use the property for its authorized purpose (*City of Chicago v. Zellers*, 64 Ill. App. 2d 24, 212 N.E.2d 737), no such right derives from an invalidly issued permit. *Ganley v. City of Chicago*, 18 Ill. App. 3d 248, 309 N.E.2d 653.

■■ Even where the builder relied upon an invalid permit, governmental units have been estopped from asserting the invalidity of the permit if their own actions and representations led the builder to expend substantial sums in reliance thereon. In *City of Marseilles v. Hustis*, 27 Ill. App. 3d 454, 325 N.E.2d 767, for example, defendant relied upon an invalid permit to order building materials and proceed with plans for construction. Though he was informed prior to beginning construction that the permit was invalid and a variance must be sought, the city clerk advised him the variance was a mere formality and did not even suggest he should suspend construction. Defendant applied for a variance and informed the city of his plans to continue construction. By the time his variance request was rejected, some 5 weeks later, he had expended about $1500 on the construction. The circuit court denied the city an injunction against defendant's construction and the appellate court affirmed, noting defendant's substantial

reliance on conduct of city officials which reasonably induced him to proceed.

The instant case is more like *O'Laughlin v. City of Chicago,* 28 Ill. App. 3d 766, 329 N.E.2d 528, where the city building commissioner erroneously issued permits and then revoked them 11 days later after discovering his error. In the interim, the landowner had poured foundation and commenced brickwork. He successfully sought an injunction against revocation of the permits in the trial court, but the appellate court reversed, noting that the city notified the plaintiff promptly of its error and did nothing to induce him to rely on the permits and that plaintiff had every opportunity to know the permits were invalidly issued. The instant case involves even more prompt notice from the city of the invalidity of the permit and even less expenditure by the landowner in the interim. There is no showing that right or justice requires estoppel. *Hickey v. Illinois Central R.R. Co.,* 35 Ill.2d 427, 220 N.E.2d 415.

■■ Finding no error in the circuit court's issuance of an injunction in the civil case, General No. 12963, we affirm. In light of our holding that the permit was invalid, we also affirm the holding in General No. 12962, imposing a fine upon defendant for proceeding with construction after being informed of the permit's invalidity.

Judgments affirmed.

TRAPP, P. J., and GREEN, J., concur.